PD-0100&0101-15

PD-0100-15 & PD-0101-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/28/2015 2:56:02 PM
Accepted 1/29/2015 2:40:15 PM
ABEL ACOSTA
CLERK

No. _____

In the
# Texas Court of Criminal Appeals
At Austin

◆

### No. 01-12-00690-CR
### No. 01-12-00691-CR

In the Court of Appeals for the
First District of Texas
at Houston

◆

# OSMIN PERAZA

*Appellant*

V.

# THE STATE OF TEXAS

*Appellee*

◆

## STATE'S PETITION FOR DISCRETIONARY REVIEW

◆

DEVON ANDERSON
District Attorney
Harris County, Texas

JESSICA AKINS
Assistant District Attorney
1201 Franklin, Suite 600
Houston, Texas 77002
Telephone: 713.755.5826
Fax: 713.755.5809
akins_jessica@dao.hctx.net

*Counsel for Appellee*

FILED IN
COURT OF CRIMINAL APPEALS

January 29, 2015

ABEL ACOSTA, CLERK

## ORAL ARGUMENT REQUESTED

# IDENTIFICATION OF THE PARTIES

Pursuant to TEX. R. APP. P. 68.4(a), a complete list of the names of all interested parties is provided below.

*Victim:*

   **A.S.** — a child victim under the age of 14

*Counsel for the State:*

   **Devon Anderson,** District Attorney of Harris County
   **Jessica Akins,** Assistant District Attorney on appeal
   **Sarah Bruchmiller,** Assistant District Attorney at trial
   1201 Franklin, Suite 600, Houston, Texas 77002

   **Lisa McMinn**, State Prosecuting Attorney
   P. O. Box 13046, Austin, Texas 78711

*Appellant or criminal defendant:*

   **Osmin Peraza**

*Counsel for Appellant:*

   **Emily DeToto** — Counsel at trial
   **Jani Maselli** — Counsel on appeal
   Assistant Public Defender, Harris County, Texas
   1201 Franklin, 13th Floor, Houston, Texas 77002

*Trial Judge:*

   **Honorable Jan Krocker** — Presiding Judge

i

# TABLE OF CONTENTS

IDENTIFICATION OF THE PARTIES ....................................................................... i

INDEX OF AUTHORITIES .................................................................................. iii

STATEMENT REGARDING ORAL ARGUMENT ............................................... 1

STATEMENT OF THE CASE .............................................................................. 1

STATEMENT OF THE PROCEDURAL HISTORY .............................................. 1

REASONS FOR REVIEW .................................................................................... 2

STATEMENT OF FACTS .................................................................................... 2

SOLE GROUND FOR REVIEW .......................................................................... 3

**The First Court of Appeals erred by finding the DNA record fee is an unconstitutional tax that violates the separation of powers clause**

CONCLUSION .................................................................................................... 8

CERTIFICATE OF SERVICE .............................................................................. 9

CERTIFICATE OF COMPLIANCE ...................................................................... 9

# INDEX OF AUTHORITIES

## CASES

*Broyles v. State,*
    688 S.W.2d 290 (1985) ....................................................................................6

*Ex Parte Carson,*
    159 S.W.2d 126 (Tex. Crim. App. 1942) .......................................................4

*Peraza v. State,*
    No. 01-1200069-CR, No. 01-12-00691-CR,
    2014 WL 7476214 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, pet. filed)... 2-7

*Salinas v. State,*
    426 S.W.3d 318 (Tex. App.—
    Houston [14th Dist.] 2014, pet. granted) ...............................................1, 7, 8

*State v. Claborn,*
    870 P.2d 169 (Okl. Cr. 1994) ........................................................................5

*State v. Johnson,*
    478 S.E.2d 16 (N.C. App. 1996) ...................................................................6

*State v. Young,*
    238 So.2d 589 (Fla. 1970) .............................................................................6

## STATUTES

TEX. CODE CRIM PROC. ANN.
    art. 102.020 (West 2012)................................................................................7

TEX. CODE CRIM PROC. ANN.
    art. 102.020(a)(1) (West 2012)....................................................................4, 5

TEX. GOV'T CODE ANN.
    § 411.1471 (a)(1)(D) (West 2012)...................................................................4

TEX. GOV'T CODE ANN.
    § 411.1471 (b) (West 2012) ............................................................................5

TEX. PENAL CODE ANN.
  § 22.021 (West 2012)..................................................................................4

## RULES

TEX. R. APP. P. 66.3(a).................................................................................2

TEX. R. APP. P. 66.3(e).................................................................................2

TEX. R. APP. P. 68.2(a) ................................................................................2

TEX. R. APP. P. 68.4(a) .................................................................................i

TEX. R. APP. P. 68.4(d)................................................................................1

TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 68.4(d), the State requests oral argument. Argument in this case is necessary because the court of appeals' opinion is in conflict with a recent case from the Fourteenth Court of Appeals, *Salinas v. State*, 426 S.W.3d 318 (Tex. App.—Houston [14th Dist.] 2014, pet. granted) (statute requiring assessment of court costs was not facially unconstitutional under the separation of powers clause of the Texas Constitution).

## STATEMENT OF THE CASE

Appellant was charged with two counts of aggravated sexual assault of a child. (CR I 2; CR II 2)[1]. Appellant pled guilty to both offenses and the trial court sentenced him to 25 years confinement on each case, to run concurrently. (CR I 59-60, 73; CR II 61-62, 75).

## STATEMENT OF THE PROCEDURAL HISTORY

On December 30, 2014, a panel of the First Court of Appeals issued a published opinion affirming these convictions, but modifying the judgments to delete the $250 DNA record fee, finding it constitutes an unconstitutional tax. *See*

---

[1] "CR I" refers to the clerk's record in cause number 1305438, and "CR II" refers to the clerk's record in cause number 1305439.

*Peraza v. State*, No. 01-1200069-CR, No. 01-12-00691-CR, 2014 WL 7476214 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, pet. filed). The opinion was authored by Justice Jennings, and joined by Justice Sharp. *Id.* Justice Brown filed a dissenting opinion. *Id.* The State's petition for discretionary review is timely filed. *See* TEX. R. APP. P. 68.2(a).

## REASONS FOR REVIEW

This petition for discretionary review should be granted because the court of appeals has issued an opinion in conflict with a decision from another court of appeals. *See* TEX. R. APP. P. 66.3(a). Further, the justices on the panel of the First Court of Appeals have disagreed on a material question of law necessary to the court's decision. *See* TEX. R. APP. P. 66.3(e).

## STATEMENT OF FACTS

Appellant was indicted for two offenses – aggravated sexual assault of a child, for intentionally and knowingly causing the mouth of a child under the age of 14, namely A.S., to contact his sexual organ, and aggravated sexual assault of a child, for intentionally and knowingly causing the sexual organ of a child under the age of 14, namely A.S., to contact appellant's sexual organ. (CR I 2; CR II 2).

An investigation was opened by CPS after A.S., the complainant, confided to a friend at school that she was being sexually abused by appellant, her uncle.

2

(State's Exhibit Number 1; RR II 15; RR III 6). Appellant is married to the complainant's aunt, her father's sister. (RR II 13-14). Appellant and his wife lived in complainant's home, for a period of 5 months, when theses offenses occurred. (RR II 14-15).

Complainant reported several sexual advances by appellant; she described one incident where appellant physically put his penis inside her vagina, and another time where he forced her mouth on his penis. (State's Exhibit Number 1; RR II 16-17; RR III 6-7). Appellant initially denied committing theses offenses, but later admitted his guilt. (State's Exhibit Number 1). He recalled committing the offenses at night when his wife was sleeping and the complainant's parents were not around. (State's Exhibit Number 1; RR III 6-7).

Complainant had trouble in school after the assaults; her grades dropped, she suffered from nightmares and attended weekly counseling sessions. (RR II 17-19). Her father testified that appellant's actions tore apart the family, so he moved his family to Nashville, Tennessee. (RR II 19).

## SOLE GROUND FOR REVIEW

**The First Court of Appeals erred by finding the DNA record fee is an unconstitutional tax that violates the separation of powers clause.**

Both the Texas Code of Criminal Procedure and the Texas Local Government Code contain provisions authorizing court costs in criminal cases.

3

Article 102.020(a)(1) of the Texas Code of Criminal Procedure authorizes court costs in the amount of $250 when a person is convicted of an offense listed in Section 411.1471(a)(1) of the Government Code. *See* TEX. CODE CRIM PROC. ANN. art. 102.020(a)(1) (West 2012). Section 411.1471(a)(1) includes the offense of aggravated sexual assault of a child. *See* TEX. GOV'T CODE ANN. § 411.1471(a)(1)(D) (West 2012); TEX. PENAL CODE ANN. § 22.021 (West 2012) (aggravated sexual assault of a child).

Appellant's court costs included the $250 fee and in his appeal to the First Court, he challenged the assessment of this DNA record fee, claiming it was an unconstitutional tax that violated the separation of powers clause of the Texas Constitution. (CR I 75-77; CR II 77-79). The majority panel of the First of Court of Appeals agreed and modified both judgments to delete the $250 DNA record fee. *Peraza*, 2014 WL 7476214 at * 12-13.

In support of their holding, the First Court of Appeals utilized *Ex Parte Carson*, 159 S.W.2d 126 (Tex. Crim. App. 1942), for the proposition that court costs in criminal proceedings must be necessary or incidental to the criminal case to be considered a proper item of cost. In *Carson*, the defendant challenged the constitutionality of a statute assessing a sum of money for the purpose of establishing and maintaining a county law library, which the Court found was not a proper cost of prosecution. *Id.*

4

The First Court of Appeals concluded that the fee is an unconstitutional tax because the revenue could possibly benefit other activities unrelated to the statewide DNA database. *Peraza*, 2014 WL 7476214 at * 10-11. As pointed out in the dissent, by doing so, the Court relied on web sites outside the record, (appellant did not provide any record evidence to show how the funds are expended) which essentially relieves appellant of his burden when bringing a facial constitutional challenge. *Peraza*, 2014 WL 7476214 at * 15-16 (Brown, J., dissenting).

The DNA record court cost is a one-time fee of $250; this statute allows law enforcement to obtain a specimen from the defendant to create a DNA record. TEX. CODE CRIM PROC. ANN. art. 102.020(a)(1) (West 2012); TEX. GOV'T CODE ANN. § 411.1471 (b) (West 2012). "As long as the statutory criminal assessments are reasonably related to the costs of administering the criminal justice system, its imposition will not render the courts 'tax gatherers' in violation of the separation of powers doctrine." *State v. Claborn*, 870 P.2d 169, 171 (Okl. Cr. 1994) (finding that various assessments, including a fingerprinting fee, a victims compensation assessment, and a drug assessment imposed on a criminal defendant convicted of drug charges did not violate the separation of powers doctrine because they are "reasonably related to the costs of administering the criminal justice system and are not simply an executive branch tax"). The Court in *Claborn* noted that the

5

separation of powers doctrine does not demand crystal clear distinctions between branches of government, acknowledging that a certain amount of "blending" is inevitable. *Id.* at 171.

And several other jurisdictions have reached this same conclusion. *See Broyles v. State*, 688 S.W.2d 290, 292 (1985) (holding that court costs of $302.25 for DWI defendant, which included an additional $250 that was allocated in part to programs relating to drunken driving, detoxification services and alcohol and drug abuse rehabilitation, was constitutional since funds go to agencies society has created to keep the highways safe from drunk drivers); *State v. Young*, 238 So.2d 589, 590 (Fla. 1970) (acknowledging difference in a civil filing fee and a post-conviction criminal fee, and holding that statute imposing a one dollar charge for law enforcement on every person convicted of a crime is not a violation of the separation of powers doctrine because it is reasonable that one who is convicted of a crime "should be made to share in the improvement of agencies that society has had to employ in defense against the very acts for which he has been convicted") (emphasis added); *State v. Johnson*, 478 S.E.2d 16, 24 (N.C. App. 1996) (finding that a $100 fee imposed on a criminal convicted of a drug charge to recompense the state for costs of drug analysis was not a violation of the separation of powers doctrine because the charge is reasonably related to the costs of administering the criminal justice system).

6

The cost collected under Article 102.020 was to reimburse the State for expenses incurred as a result of the felony prosecution, specifically costs spent to obtain DNA specimens in certain cases. TEX. CODE CRIM PROC. ANN. art. 102.020 (West 2012). Since this statutory assessment is reasonably related to the costs of administering the criminal justice system, the Court failed to demonstrate how the statute authorizing this court cost is unconstitutional. *See Peraza*, 2014 WL 7476214 at * 16 (Brown, J., dissenting) (Having determined that both portions of the DNA Record Fee—the 65% that benefits the criminal-justice planning account and the 35% that benefits the state highway fund—are sufficiently related to the prosecution of a criminal case, I would conclude that appellant failed to satisfy his burden of demonstrating that the DNA Record Fee is facially unconstitutional).

The First Court acknowledges the Fourteenth Court of Appeals holding in *Salinas v. State*, where the Court examined the consolidated court cost on this same basis and found it was constitutional, but disagrees with its conclusion. *See Peraza*, 2014 WL 7476214 at * 12; *Salinas*, 426 S.W.3d at 325-328. (statute requiring defendants convicted of a felony to pay $133 as a court cost, with those funds allocated to 14 specified funds, was not facially unconstitutional under the separation of powers clause of the Texas Constitution, on the theory that it required courts to perform executive function by collecting a tax; there was no evidence what the designated funds actually did with the money, and even if some

7

of the fund recipients were invalid because they were not related to the justice system, court costs could be collected and distributed in accordance with severability principles to the admittedly appropriate funds specified in the statute).

Review of the Court of Appeal's opinion in this case is necessary, as *Osmin Peraza v. State* is a published opinion that is in conflict with a decision from the Fourteenth Court of Appeals, *Salinas*, 426 S.W.3d at 325-328.[2]

## CONCLUSION

It is respectfully requested that this petition be granted, the Court of Appeals' judgment on this issue be reversed, and the conviction be affirmed.

DEVON ANDERSON
District Attorney
Harris County, Texas

/s/ *Jessica Akins*

JESSICA AKINS
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
akins_jessica@dao.hctx.net
713.755.5826
TBC No. 24029415

---

[2]     This Court has ordered and received briefing on the separation of powers issue as it relates to court costs in *Orlando Salinas v. State*, PD-0419-14.  It has not yet been submitted.

## CERTIFICATE OF SERVICE

This is to certify that a copy of this document has been sent to the following:

Jani Maselli
Assistant Public Defender
Harris County, Texas
1201 Franklin, 13th Floor
Houston, Texas 77002
Jani.Maselli@pdo.hctx.net

Lisa C. McMinn
State Prosecuting Attorney
P. O. Box 13046
Austin, Texas 78711
Lisa.McMinn@SPA.texas.gov

/s/ *Jessica Akins*

JESSICA AKINS
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
akins_jessica@dao.hctx.net
713.755.5826
TBC No. 24029415

## CERTIFICATE OF COMPLIANCE

This is to certify that this computer-generated document has a word count of 2290 words, based upon the representation provided by the word processing program that was used to create the document.

/s/ *Jessica Akins*

Date: 1/28/2015

# APPENDIX A

2014 WL 7476214
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN
RELEASED FOR PUBLICATION IN THE
PERMANENT LAW REPORTS. UNTIL RELEASED,
IT IS SUBJECT TO REVISION OR WITHDRAWAL.
OPINION
Court of Appeals of Texas,
Houston (1st Dist.

Osmin Peraza, Appellant
v.
The State of Texas, Appellee
NO. 01–12–00690–CR, NO. 01–12–00691–CR |
Opinion issued December 30, 2014

On Appeal from the 184th District Court, Harris County,
Texas, Trial Court Case Nos. 1305438 and 1305439

**Attorneys and Law Firms**

Jani Maselli, Assistant Public Defender, Houston, TX, for
appellant.

Devon Anderson, District Attorney, Jessica Akins,
Assistant District Attorney, Houston, TX, for State.

Panel consists of Justices Jennings, Sharp, and Brown.

**OPINION**

Terry Jennings, Justice

**\*1** Appellant, Osmin Peraza, without an agreed
punishment recommendation from the State, pleaded
guilty to two separate offenses of aggravated sexual
assault of a child less than fourteen years of age.[1] The trial
court assessed his punishment at confinement for twenty-
five years for each offense, with the sentences to run
concurrently. In four issues, appellant contends that each
judgment contains an erroneous and unsupported
"Sheriff's Fee" and an unconstitutional "DNA Record
Fee," the trial court erred in not permitting him to
withdraw his guilty pleas, and it erred in denying him a
hearing on his motions for new trial and in arrest of
judgment.

We modify the trial court's judgments and affirm as
modified.

**Background**

A Harris County Grand Jury issued a true bill of
indictment, accusing appellant of committing two
separate offenses of aggravated sexual assault of a child
less than fourteen years of age. After his arrest, appellant
failed a polygraph test and then admitted to a police
officer that he had committed the offenses. He
subsequently pleaded guilty to committing the offenses.
In his plea papers, appellant admitted that he had
intentionally and knowingly caused both the mouth of the
complainant, a person younger than fourteen years of age,
to contact his sexual organ and the sexual organ of the
complainant to contact his sexual organ. In each case,
appellant also signed written admonishments,
representing that he was mentally competent, understood
the nature of the charge against him and the consequence
of his plea, and freely and voluntarily pleaded guilty to
the offense. Appellant's attorney signed the plea papers,
affirming that she believed that appellant had executed his
pleas knowingly, voluntarily, and after a full discussion of
the consequences of his pleas. The trial court found
sufficient evidence of appellant's guilt in both cases and
that appellant had entered his guilty pleas freely,
knowingly, and voluntarily. And it admonished appellant
of his legal rights, accepted his guilty pleas, and ordered a
presentence investigation in each case.

At the sentencing hearing, appellant moved to withdraw
his guilty pleas, arguing that they had been coerced. After
finding that appellant had pleaded guilty freely and
voluntarily, the trial court denied his motion.

In its judgment of conviction in each case, the trial court
ordered appellant to pay $634 in court costs, including, as
part of the "Sheriff's Fee," a $50 charge for "serving
capias"[2] and a $5 charge for an arrest without a warrant or
capias.[3] The trial court also included within the $634 of
court costs a $250 "DNA Record Fee."[4] Appellant then
filed his motions for new trial and in arrest of judgment,
which the trial court denied without a hearing.

**Withdrawal of Guilty Pleas**

**\*2** In his first issue, appellant argues that the trial court
erred in denying his motion to withdraw his guilty pleas
because he did not enter the pleas voluntarily.

A defendant may withdraw his guilty plea at any time
before judgment is pronounced or the trial court takes the
plea under advisement. *Jackson v. State,* 590 S.W.2d 514,
515 (Tex.Crim.App.1979); *State v. Ellis,* 976 S.W.2d 789,
792 (Tex.App.–Houston [1st Dist.] 1998, no pet.). Once a
plea has been taken under advisement or guilt has been
adjudicated, however, a request to withdraw the plea is
untimely, and the withdrawal of the plea is within the
sound discretion of the trial court. *Jackson,* 590 S.W.2d at
515; *Ellis,* 976 S.W.2d at 792. After the trial court has
admonished the defendant and received the plea and
evidence, the passage of the case for a presentence
investigation constitutes taking the case under
advisement. *See Jackson,* 590 S.W.2d at 514–15;

11

*Wissinger v. State,* 702 S.W.2d 261, 262–63 (Tex.App.–Houston [1st Dist.] 1985, pet. ref d). Because appellant did not request that his guilty pleas be withdrawn until after the trial court had taken his cases under advisement, we review the trial court's denial of his motion to withdraw his pleas for an abuse of discretion.

A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Lyles v. State,* 850 S.W.2d 497, 502 (Tex.Crim.App.1993); *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex.Crim.App.1990). To show that the trial court abused its discretion when it refused to allow appellant to withdraw his guilty pleas, he must show that "the trial court's rulings lie outside the zone of reasonable disagreement." *Jagaroo v. State,* 180 S.W.3d 793, 802 (Tex.App.–Houston [14th Dist.] 2005, pet. ref'd).

Appellant first argues that there is no evidence that he voluntarily entered his pleas because there is no record of the trial court's oral discussion with him of his legal rights. We consider the entire record in determining whether a plea was entered voluntarily. *Fimberg v. State,* 922 S.W.2d 205, 207 (Tex.App.–Houston [1st Dist.] 1996, pet. ref'd). A prima facie presumption that a defendant voluntarily and knowingly pleaded guilty arises when the trial court finds that the defendant was properly admonished. *See Martinez v. State,* 981 S.W.2d 195, 197 (Tex.Crim.App.1998); *see also* TEX.CODE CRIM. PROC. ANN. art. 26.13(b) (Vernon Supp.2014) (guilty pleas may not be accepted unless mentally competent defendant enters plea freely and voluntarily). When the record presents a prima facie showing that the plea was entered voluntarily and knowingly, "the burden shifts to the defendant to show that he entered the plea without understanding the consequences." *Arreola v. State,* 207 S.W.3d 387, 391 (Tex.App.–Houston [1st Dist.] 2006, no pet.).

Here, the absence of a recorded plea colloquy, alone, does not overcome the presumption that appellant was properly admonished and understood the consequences and nature of his pleas. *See Dusenberry v. State,* 915 S.W.2d 947, 949–52 (Tex.App.–Houston [1st Dist.] 1996, pet. ref'd) (concluding guilty plea voluntary because defendant received written admonishments of legal rights). Although the plea colloquy was not recorded, appellant received written admonishments of his legal rights, affirmed that he was mentally competent and understood the nature of the charges against him and the consequences of his pleas, and agreed that he freely and voluntarily pleaded guilty in each case. Further, the plea papers show that appellant's trial counsel and the trial court both verified that appellant entered his guilty pleas freely, knowingly, and voluntarily, after having fully discussed his pleas and their consequences with counsel. On this record, there is no evidence that appellant was not properly admonished or failed to understand the consequence or nature of his pleas.

**\*3** In regard to appellant's assertion that his guilty pleas were coerced, we note that "a plea is involuntary when it is 'induced by threats, misrepresentations, or improper promises' " by the prosecutor, judge, or law enforcement officials. *Rios v. State,* 377 S.W.3d 131, 136 (Tex.App.–Houston [1st Dist.] 2012, pet. ref'd) (quoting *Kniatt v. State,* 206 S.W.3d 657, 664 (Tex.Crim.App.2006)). Moreover, we presume the regularity of the judgments and proceedings, and appellant has the burden of overcoming this presumption. *Dusenberry,* 915 S.W.2d at 949.

Appellant presented no evidence that his guilty pleas were actually coerced. At his sentencing hearing, appellant's trial counsel suggested that appellant was coerced into pleading guilty because the jury was "on the way" and appellant had failed a polygraph test immediately before admitting to a police officer that he had committed the sexual-assault offenses. The record, however, contains no evidence that anyone coerced appellant into pleading guilty. Appellant voluntarily submitted to a polygraph test, and neither his failure of the polygraph test, nor the immediacy of a jury trial, constituted a threat, misrepresentation, or improper promise. Thus, appellant has not overcome the presumption that he knowingly and voluntarily entered his pleas.

When appellant requested to withdraw his guilty pleas, the trial court had taken his cases under advisement and reset them for a punishment hearing. Because the trial court had already admonished appellant of his legal rights and he had already voluntarily pleaded guilty, his request to withdraw his pleas was untimely, and the trial court had discretion to accept or deny his motion. *See Jackson,* 590 S.W.2d at 515.

Accordingly, we hold that the trial court did not err in denying appellant's motion to withdraw his guilty pleas.

We overrule appellant's first issue.

### Court Costs for Arrest

In his second issue, appellant argues that the trial court's judgments are invalid because they each contain an erroneous and unsupported "Sheriff's Fee." Appellant asserts that, "[a]t the very least, the $50.00 Sheriff's Fee [for serving a capias] should be removed" from the $634 in court costs assessed against him in each judgment.

A criminal defendant must pay certain statutorily mandated costs and fees, which vary depending on the type of offense, the underlying facts, and the procedural history of the case. *See* TEX. GOV'T CODE ANN. § 102.021 (Vernon Supp.2014) (listing court costs upon conviction); TEX. LOC. GOV'T CODE ANN.. § 133.102

12

(Vernon Supp.2014) (same). The district court clerk must keep a record of each fee or cost charged for a service rendered in a criminal action or proceeding. TEX. CODE CRIM. PROC. ANN. art. 103.009(a)(1) (Vernon 2006). If a criminal action is appealed, an officer of the court must certify and sign a bill of costs and send it to the appellate court. TEX. CODE CRIM. PROC. ANN. art. 103.006 (Vernon 2006).

Court costs do not constitute part of the guilt or sentence of a criminal defendant—"they are 'a nonpunitive recoupment of the costs of judicial resources expended in connection with the trial of a case.' " Johnson v. State, 423 S.W.3d 385, 390 (Tex.Crim.App.2014) (quoting Armstrong v. State, 340 S.W.3d 759, 767 (Tex.Crim.App.2011)). Therefore, we review the assessment of court costs to determine whether there is a basis for the cost; we do not undertake an evidentiary-sufficiency review. Id.

**\*4** Here, the trial court clerk's bills of costs each include a $50 charge for "serving capias" as part of the "Sheriff's Fee" assessed against appellant. See TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(2) (Vernon Supp.2014) ("A defendant convicted of a felony or a misdemeanor shall pay ... $50 for executing or processing an issued arrest warrant, capias, or capias pro fine...."). They also include a $5 charge for an arrest without a warrant/capias. See id. art. 102.011(a)(1) (authorizing $5 charge for arrest without warrant). The State agrees that the records do not support the $50 charge for "serving capias." And the records contain no basis to conclude that capiases were issued for appellant's arrest.

The proper remedy for such an unsupported fee is for the appellate court to modify the judgment, not to grant a new trial as appellant has requested. See TEX. R. APP. P. 43.2(b); French v. State, 830 S.W.2d 607, 609 (Tex.Crim.App.1992) (agreeing "appellate court has authority to reform a [trial court] judgment to ... make the record speak the truth when the matter has been called to its attention by any source"); see also Nolan v. State, 39 S.W.3d 697, 698 (Tex.App.–Houston [1st Dist.] 2001, no pet.) ("An appellate court has the power to correct and reform a trial court judgment 'to make the record speak the truth when it has the necessary data and information to do so ....' " (quoting Asberry v. State, 813 S.W.2d 526, 529 (Tex.App.–Dallas 1991, pet. ref'd))).

Because there is no basis in the record to support the $50 charge for "serving capias" assessed against appellant as part of the "Sheriff's Fee" in both of appellant's cases, we modify each judgment to delete the $50 charge from the court costs.

We sustain appellant's second issue.

**Constitutionality of "DNA Record Fee"**

In his third issue, appellant argues that the trial court's judgments are invalid because they each assess an unconstitutional $250 "DNA Record Fee." See TEX. CODE CRIM. PROC. ANN. art. 102.020(a)(1) (Vernon Supp.2014) (authorizing collection of $250 from persons convicted of offenses listed in Texas Government Code section 411.1471(a)(1)). Appellant asserts that the fee required by article 102.020 is facially unconstitutional under the separation of powers clause of the Texas Constitution. See TEX. CONST. art. II, § 1.

Whether a statute is facially constitutional is a question of law that we review de novo. Ex Parte Lo, 424 S.W.3d 10, 14 (Tex.Crim.App.2013); Ma loney v. State, 294 S.W.3d 613, 626 (Tex.App.–Houston [1st Dist.] 2009, pet. ref'd). When reviewing a constitutional challenge, we "presume that the statute is valid and that the legislature was neither unreasonable nor arbitrary in enacting it." Curry v. State, 186 S.W.3d 39, 42 (Tex.App.–Houston [1st Dist.] 2005, no pet.); see also State v. Rosseau, 396 S.W.3d 550, 557 (Tex.Crim.App.2013). If the statute can be construed in two different ways, one of which sustains its validity, we apply the interpretation that sustains its validity. Maloney, 294 S.W.3d at 625.

The party challenging the statute bears the burden of establishing the statute's unconstitutionality. Rosseau, 396 S.W.3d at 557; Curry, 186 S.W.3d at 42. "A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid." Santikos v. State, 836 S.W.2d 631, 633 (Tex.Crim.App.1992); see also Rosseau, 396 S.W.3d at 557. We "must uphold the challenged statute if it can be reasonably construed in a manner consistent with the legislative intent and is not repugnant to the Constitution." Curry, 186 S.W.3d at 42.

**\*5** Article 102.020(a)(1), titled "Costs Related to DNA Testing," provides that a defendant convicted of certain offenses, including aggravated sexual assault of a child less than fourteen years of age, "shall pay as a cost of court: $250 [upon] conviction...." TEX. CODE CRIM. PROC. ANN. art. 102.020(a)(1). Thirty-five percent of the revenue received from this "DNA Record Fee" is dedicated to the state highway fund, while sixty-five percent of the revenue is dedicated to the general revenue fund of the criminal justice planning account. Id. art. 102.020(h).

Appellant argues that the "DNA Record Fee" is an impermissible tax collected by the judiciary, rather than a legitimate court cost, because revenue from this fee is dedicated to the state highway fund and criminal justice planning account and, thus, used for services that are neither necessary nor incidental to the trial of a criminal case. In support of his argument, appellant principally relies on Ex Parte Carson, 143 Tex.Crim. 498, 159

13

S.W.2d 126 (1942).

In *Carson,* the Texas Court of Criminal Appeals considered whether it was constitutionally permissible to impose a $1 fee as a court cost in all cases filed in counties with more than eight district courts or more than three county courts at law. 159 S.W.2d at 127. The revenue collected from the $1 fee was directed to the "County Law Library Fund" and "available to be used for certain costs and expenses in acquiring, maintaining and operating a law library available to the judges of the courts and to the attorneys of litigants." *Id.* The court held that the fee constituted an unconstitutional tax, not a legitimate court cost, because it was "neither necessary nor incidental to the trial of a criminal case." *Id.* at 127, 130. The court cautioned that to hold otherwise,

> would lead into fields of expenditures which may as well include the cost of the court houses, the automobiles which officers use to apprehend criminals and even the roads upon which they ride. If something so remote as a law library may be properly charged to the litigant on the theory that it better prepares the courts and the attorneys for the performance of their duties, it occurs to us that we might as logically tax an item of cost for the education of such attorneys and judges and even the endowments of the schools which they attend.

*Id.* at 127.

Appellant, likening the "DNA Record Fee" to the law library fee in *Carson,* first asserts that the portion of the "DNA Record Fee" dedicated to the state highway fund "is used ... [to] provide services that are neither necessary nor incidental to the trial of a criminal case."

By law, "[m]oney that is required to be used for public roadways by the Texas Constitution or federal law and that is deposited in the state treasury to the credit of the *state highway fund, ...* may be used only: (1) to improve the state highway system; (2) to mitigate adverse environmental effects that result directly from construction or maintenance of a state highway by the department; or (3) by the Department of Public Safety to police the state highway system and to administer state laws relating to traffic and safety on public roads." TEX. TRANSP. CODE ANN. § 222.001(a) (Vernon 2011) (emphasis added). Section 222.002 supplements this instruction and provides that "[m]oney in the *state highway fund* that is not required to be spent for public roadways by the Texas Constitution or federal law may be used for any function performed by the department." *Id.* §

222.002 (Vernon 2011) (emphasis added). "[T]he department" referenced in section 222.002 is the Texas Department of Transportation ("TxDOT"). *Id.* § 201.001(a)(2) (Vernon Supp.2014); *see also State v. Montgomery Cnty.,* 338 S.W.3d 49, 56 (Tex.App.–Beaumont 2011, pet. denied) (noting " '[d]epartment' means the Department of Transportation").

**\*6** Here, the "DNA Record Fee" revenue dedicated to the state highway fund does not constitute money that is required, by either the Texas Constitution or federal law, to be used for public roadways. *See* TEX. CODE CRIM. PROC. ANN. art. 102.020(a)(1); TEX. TRANSP. CODE ANN. § 222.001(a). Therefore, pursuant to section 222.002, such money may be used for *any function of TxDOT. See* TEX. TRANSP. CODE ANN. §§ 201,001, 222.002.

The stated mission of TxDOT is to "[w]ork with others to provide safe and reliable transportation solutions for Texas."[5] *Inside TxDOT: Mission, Goals and Values,* TEX. DEP'T TRANSP., http://www.txdot.gov/inside-txdot/contact-us/mission.html (last visited Dec. 16, 2014); *see also* Glenn T. Hasler, *Dangerous Distractions: The Problematic Use of Wireless Communication Devices While Driving,* 12 TEX. TECH. ADMIN. L.J. 155, 168 (2010) ("TxDOT's purpose is to facilitate effective movement throughout the state by providing safe, efficient transportation systems."); Kyle R. Baum, Comment, *Rollin' on Down the Rail: Can Texas Lead the Nation in Developing Efficient High–Speed Rail this Time Around?,* 45 TEX. TECH. L.REV. ONLINE 1, 2 (2013) (TxDOT's "core mission is to 'provide safe and efficient movement of people and goods, enhance economic viability and improve the quality of life for people that travel in the state of Texas by maintaining existing roadways and collaborating with private and local entities to plan, design, build and maintain expanded transportation infrastructure' ").

TxDOT is divided into twenty-two divisions, ranging from aviation to maritime to public transportation and rail, which are tasked with handling the responsibilities of the department. *See* TEX. TRANSP. CODE ANN. § 201.202(a) (Vernon Supp.2014) ("The commission shall organize the department into divisions to accomplish the department's functions ... including divisions for: (1) aviation; (2) highways and roads; and (3) public transportation."); *Inside TxDOT: Divisions,* TEX. DEP'T TRANSP., http:// www.txdot.gov/inside-txdot/division.html (last visited Dec. 16, 2014) ("From rail crossings to right of way, traffic cameras to travel maps, and bridge inspections to bid opportunities, TxDOT's divisions handle a diverse range of services for the agency.").

TxDOT is responsible for developing a statewide transportation plan for addressing all modes of transportation, including highways and turnpikes,

14

aviation, mass transportation, railroads, high-speed railroads, and water traffic. *See* TEX. TRANSP. CODE ANN. § 201.601(a) (Vernon Supp.2014); *Robbins v. Limestone Cnty.,* 114 Tex. 345, 268 S.W. 915, 920 (1925) (agency created to "formulate and execute plans and policies for the location, construction and maintenance of a comprehensive system of state highways and public roads"); *see also* TEX. TRANSP. CODE ANN. §§ 201.6011–622 (Vernon 2011 & Supp.2014) (listing plans and projects of TxDOT); Brian K. Carroll, *The Road Goes on Forever and the Claims Process Never Ends: An Approach for Success in Handling Texas Department of Transportation Construction Claims,* 13 TEX. TECH. ADMIN. L.J. 233, 234 (2012) ("The projects range from small landscaping and guardrail projects to major interchanges.... TxDOT also supervises the construction of buildings for rest areas, area engineer's offices, district offices, visitor's centers, and other special purpose buildings....").

**\*7** The court in *Carson,* which constitutes binding precedent on this Court,[6] held that fees which are "neither necessary nor incidental to the trial of a criminal case" are not legitimate courts costs that may be assessed against a defendant. 159 S.W.2d at 127, 130. As discussed above, the responsibilities of TxDOT, which under the Code of Criminal Procedure is entitled to use thirty-five percent of the revenue collected by the "DNA Record Fee," do not relate to the trial of a criminal case. Instead, the responsibilities of TxDOT are far more remote from a criminal trial than the county law libraries which were to be used by the judges and attorneys for trial preparation in *Carson.* Thus, it cannot be reasonably concluded that the portion of the revenue collected through the "DNA Record Fee" and dedicated to the state highway fund constitutes a proper court cost to be assessed against appellant or any other criminal defendant.

Accordingly, we hold that the portions of articles 102.020(a)(1) and 102.020(h) requiring the collection of the "DNA Record Fee" from appellant to be dedicated the state highway fund constitute an unconstitutional tax. *See Carson,* 159 S.W.2d at 127, 130. *But see O'Bannon v. State,* 435 S.W.3d 378, 380–82 (Tex.App.–Houston [14th Dist.] 2014, no pet.).

We note that our dissenting colleague would not hold that the portion of the "DNA Record Fee" revenue dedicated to the state highway fund is an unconstitutional tax. In doing so, he relies on Texas Government Code section 411.145(c), which provides that "[a] fee collected under this section shall be deposited in the state treasury to the credit of the state highway fund, and money deposited to the state highway fund under this section and under Articles 42.12 and 102.020(h), Code of Criminal Procedure, may be used only to defray the cost of administering [chapter 411, subchapter G] and Section 411.0205." TEX. GOV'T CODE ANN. § 411.145(c) (Vernon 2012); *see also id.* § 411.0205 (Vernon

Supp.2014) (crime laboratory accreditation process). Because "[s]ubchapter G governs the collection and management of DNA samples, including [a]ppellant's, by [the Texas Department of Public Safety ("DPS") ]" and "[s]ection 411.0205 regulates the accreditation of forensic crime laboratories by DPS," our dissenting colleague concludes that "the portion of the DNA Record Fee credited to the state highway fund is used to defray the costs associated with collecting, storing, and testing DNA samples" and, thus, "paying for DNA sampling and crime-lab accreditation is a valid, constitutional use of the DNA Record Fee under *Carson.*"

In reaching his conclusion, however, our dissenting colleague fails to consider the entire breadth of subchapter G. For instance, the "DNA Database" provided for in chapter 411, subchapter G is used for a wide variety of purposes, including "assisting in the recovery or identification of human remains from a disaster or for humanitarian purposes," "assisting in the identification of living or deceased missing persons," "establishing a population statistics database," "assisting in identification research, forensic validation studies, or forensic protocol development," and "retesting to validate or update the original analysis or assisting in database or DNA laboratory quality control." *Id.* § 411.143(c) (Vernon 2012). And the database contains DNA records from a whole host of individuals, such as "an unidentified missing person or unidentified skeletal remains or body parts," "a close biological relative of a person who has been reported missing," and "a person at risk of becoming lost, such as a child or a person declared ... mentally incapacitated." *Id.* § 411.142(g) (Vernon 2012). Notably, none of the above statutory purposes or the individual records in the DNA Database relate to appellant's criminal trial, despite the fact that thirty-five percent of the revenue collected via the "DNA Record Fee" may be utilized by DPS to "defray the cost of administering" chapter 411, subchapter G.[7] *See id.* § 411.145(c).

**\*8** The Texas Court of Criminal Appeals has clearly favored a strict definition of what constitutes a legitimate court cost that may be assessed against a criminal defendant. *See Carson,* 159 S.W.2d at 127; *see also Salinas v. State,* 426 S.W.3d 318, 329–30 (Tex.App.–Houston [14th Dist.] 2014, no pet.) (Jamison, J., dissenting) (explaining *Carson* constitutes binding precedent and "the *Carson* Court clearly favored a strict definition of permissible 'court costs' in a criminal case"). And the revenue collected via the "DNA Record Fee" to be used by DPS for anything covered by chapter 411, subchapter G, or for crime laboratory accreditation under Government Code section 411.0205, is not closely enough related to appellant's criminal trial to be considered constitutional.

Appellant, again relying on *Carson,* next asserts that the portion of the "DNA Record Fee" dedicated to the general revenue fund of the criminal justice planning account also

constitutes an unconstitutional tax.

The criminal justice planning account is administered by the Criminal Justice Division ("CJD") of the Governor's Office. *See* TEX. GOV'T CODE ANN. § 772.006(a)(2) (Vernon 2012). Appellant asserts that the CJD's "mission is to create and support programs that protect people from crime, reduce the number of crimes committed, and to promote accountability, efficiency, and effectiveness within the criminal justice system." He notes that it "focuses on the enhancement of Texas'[s] capacity to prevent crime, provide service and treatment options, enforce laws, train staff and volunteers, and the restoration of crime victims to full physical, emotional and mental health." Appellant argues that because "the courts [are] never mentioned" as part of the CJD's mission or focus, the revenue collected via the "DNA Record Fee" is not used by the CJD for services that are necessary or incidental to the trial of a criminal case.

The Texas Government Code reveals that the CJD was established to:

(1) advise and assist the governor in developing policies, plans, programs, and proposed legislation for improving the coordination, administration, and effectiveness of the criminal justice system;

(2) administer the criminal justice planning fund;

(3) prepare a state comprehensive criminal justice plan, to update the plan annually based on an analysis of the state's criminal justice problems and needs, and to encourage identical or substantially similar local and regional comprehensive criminal justice planning efforts;

(4) establish goals, priorities, and standards for programs and projects to improve the administration of justice and the efficiency of law enforcement, the judicial system, prosecution, criminal defense, and adult and juvenile corrections and rehabilitation;

(5) award grants to state agencies, units of local government, school districts, and private, nonprofit corporations from the criminal justice planning fund for programs and projects on consideration of the goals, priorities, and standards recommended by the Criminal Justice Policy Council;

(6) apply for, obtain, and allocate for the purposes of this section any federal or other funds which may be made available for programs and projects that address the goals, priorities, and standards established in local and regional comprehensive criminal justice planning efforts or assist those efforts;

(7) administer the funds provided by this section in such a manner as to ensure that grants received under

this section do not supplant state or local funds;

(8) monitor and evaluate programs and projects funded under this section, cooperate with and render technical assistance to state agencies and local governments seeking to reduce crime or enhance the performance and operation of the criminal justice system, and collect from any state or local government entity information, data, statistics, or other material necessary to carry out the purposes of this section;

**\*9** (9) submit a biennial report to the legislature reporting the division's activities during the preceding biennium including the comprehensive state criminal justice plans and other studies, evaluations, crime data analyses, reports, or proposed legislation that the governor determines appropriate or the legislature requests; and

(10) perform other duties as necessary to carry out the duties listed in this subsection and adopt rules and procedures as necessary.

*Id.*

In regard to the CJD's administration of the criminal justice planning account, the legislature determines and appropriates the necessary amount of money from the criminal justice planning fund to the CJD. TEX. CODE CRIM. PROC. ANN. art. 102.056(a) (Vernon Supp.2014). The CJD then uses this money to "[s]upport a wide range of projects designed to reduce crime and improve the criminal and juvenile justice systems."[8] *CJD Funding Sources,* OFFICE OF GOVERNOR, CRIMINAL JUSTICE DIV., 1, http://governor.state.tx.us/files/cjd/CJD_Funding_Sources.pdf (last visited Dec. 16, 2014); *see also* TEX. CODE CRIM. PROC. ANN. art. 102.056(a) (money from criminal justice planning fund used by CJD "for state and local criminal justice projects," with not less than twenty percent of such money going to juvenile justice programs); *Financial Services: Grants over $25,000 Administered by the Office of the Governor,* OFFICE OF GOVERNOR, http://governor.state.tx.us/financial-services/grants/ (last visited Dec. 16, 2014) (grants from criminal justice planning fund "support a wide range of projects designed to reduce crime and improve the criminal [and] juvenile justice systems"); *Helpful Questions and Answers for Managing Grants,* OFFICE OF GOVERNOR, CRIMINAL JUSTICE DIV., B–12 (Feb.2014), http://governor.state.tx.us/files/cjd/CJD_Guide_to_Grants_v7.pdf (same).

Numerous entities are eligible to apply for grants from the criminal justice planning fund, including "[s]tate agencies, units of local government, independent school districts, nonprofit corporations, Native American tribes, COGs, universities, colleges, hospital districts, juvenile boards, regional education service centers, community

16

supervision and corrections departments, crime control and prevention districts, and faith-based organizations." *CJD Funding Sources, supra,* at 1; *see also* TEX. GOV'T CODE ANN. § 772.006(a)(5) (CJD awards grants from criminal justice planning fund "to state agencies, units of local government, school districts, and private, nonprofit corporations"); Press Release, Office of Governor, Gov. Perry Awards $195,000 From State Criminal Justice Planning Funds (Jan. 28, 2008), http:// governor.state.tx.us/news/press-release/5133/ (grant recipients from criminal justice planning fund "include local units of government, independent school districts, non-profit corporations, hospitals, universities, colleges, community supervision and corrections departments, law enforcement agencies and councils of governments").

**\*10** Moreover, the CJD has awarded money from the fund to a variety of recipients, such as the Alamo Area Council of Governments for Regional Police Training Academy, the Bastrop County Women's Shelter for SAINT: Sexual Assault Integrated Nursing Team, Fort Bend County for the "Saved by the Bell" Delinquency Reduction Program, the Katy Christian Ministries for Counseling Services for Victims of Domestic Violence, and The Family Place for S.T.A.R.T. (Students Tackling Abusive Relationships Together). *See, e.g.,* Press Release, Office of Governor Tex., Gov. Perry Awards $8 Million in Grants to Improve Criminal Justice Systems (Sept. 10, 2008), http:// governor.state.tx.us/news/press-release/11114/ (listing seventy-nine recipients that received more than $8 million in grants from criminal justice planning fund); Press Release, Office of the Governor of Tex., Gov. Perry Awards $195,000 From State Criminal Justice Planning Fund, *supra* (stating more than $195,000 in grants from criminal justice planning fund awarded to Wood County for Wood County Rural Prosecutor Project and BeyondMissing Inc. for Texas Amber Alert Network); Press Release, Office of Governor, Governor Rick Perry Announces Statewide Grant to Reduce School Dropouts (Nov. 7, 2001), http:// governor.state.tx.us/ news/press-release/4229/ (announcing $168,146 criminal justice planning fund grant to Behavioral Health Institute of Waco to assist with "efforts to reduce school failure, dropout rates, and juvenile crime"); *see also Helpful Questions and Answers for Managing Grants, supra,* at B–12 (listing activities eligible for grants from criminal justice planning fund, such as job training, professional therapy and counseling, school based delinquency prevention, substance abuse, and peer support groups).

With this background in mind, we turn to the propriety of the portion of the revenue collected via the "DNA Record Fee" dedicated to the criminal justice planning account and to be used by the CJD. As the Texas Court of Criminal Appeals explained in *Carson,* adopting a less than strict definition of what constitutes a legitimate court cost "would lead into fields of expenditures which may as well include the cost of the court houses, the automobiles which officers use to apprehend criminals and even the roads upon which they ride." 159 S.W.2d at 127.

Here, sixty-five percent of the revenue received through the "DNA Record Fee" is dedicated by law to the general revenue fund of the criminal justice planning account in order to "[s]upport a wide range of projects designed to reduce crime and improve the criminal and juvenile justice systems." *See CJD Funding Sources, supra,* at 1. The recipients of money from the criminal justice planning fund are vastly diverse and range from state agencies to schools to hospitals and faith-based organizations. Notably, the money from the criminal justice planning fund is not required to be directed to the courts or to services necessarily or incidentally related to criminal trials. And often times such revenue is given to programs that, as the court in *Carson* specifically noted, could not possibly relate to legitimate court costs. *See* 159 S.W.2d at 127 (costs for training and education not legitimate court costs that may be assessed against criminal defendants). Accordingly, we cannot conclude that the criminal justice planning account, which is funded by the "DNA Record Fee," passes constitutional muster. *See Salinas,* 426 S.W.3d at 330–31 (Jamison, J., dissenting) (concluding court costs assessed pursuant to Texas Local Government Code section 133.102, which directs approximately thirteen percent of its revenue to the criminal justice planning fund, unconstitutional).

The State argues that appellant has not shown that the "DNA Record Fee" is unconstitutional because it "is a one-time fee of $250" and "is certainly applicable to appellant, as he was court-ordered to provide a DNA specimen in both sexual assault cases." The State asserts that the "DNA Record Fee" was ordered "to reimburse the State for expenses incurred as a result of the felony prosecution [of appellant], specifically costs spent to obtain DNA specimens in certain cases." And "[s]ince this statutory assessment is reasonably related to the costs of administering the criminal justice system, appellant has failed to show how the statute authorizing this court cost is unconstitutional."

DPS is required to collect a DNA specimen from persons convicted of certain crimes, including aggravated sexual assault of a child less than fourteen years of age, and maintain a database that includes, among others, these DNA specimens. *See* TEX. GOV'T CODE ANN. § 411.142 (directing DPS to maintain "computerized database that serves as the central depository in the state for DNA records"); *id.* § 411.1471 (Vernon 2012) (requiring collection of DNA specimen from those convicted of certain crimes). As asserted by the State, funds from the criminal justice planning account may be used by the CJD to reimburse DPS and other law enforcement agencies for expenses incurred in performing duties required by Texas Government Code section 411.1471, namely the taking of a DNA specimen from a defendant, preserving of the specimen, and maintaining a collection of the specimen. *See* TEX.CODE CRIM.

PROC. ANN. art. 102.056(e); TEX. GOV'T CODE ANN. § 411.1471.

**\*11** Notably though, reimbursement for expenses related to the collection and maintenance of DNA specimens is not automatic or guaranteed under Texas Code of Criminal Procedure article 102.056(e); the statute only provides that DPS will be reimbursed with funds from the criminal justice planning account after it complies with certain procedures. *See* TEX. CODE CRIM. PROC. ANN. art. 102.056(e) (law enforcement agency, incurring expenses in previous calendar quarter, must, on first day after end of calendar quarter, send certified statement of costs incurred to CJD). Thus, although appellant provided a DNA specimen to DPS in accordance with section 411.1471 in conjunction with his cases, it cannot be assumed that DPS was automatically reimbursed by virtue of the "DNA Record Fee" for any expenses associated with the collection of his specimen.

Further, we note that even if we presume that some of the revenue collected pursuant to the "DNA Record Fee" is actually used to reimburse DPS or other law enforcement agencies for collecting DNA specimens from criminal defendants, preserving such specimens, and maintaining a record of such collections, it is readily apparent that this is not the only way in which the revenue is used. Sixty-five percent of the revenue collected through the "DNA Record Fee" is dedicated to the general revenue fund of the criminal justice planning account. As outlined above, money in the criminal justice planning fund is given to a vast number of diverse entities, almost of none of which have any relation to the collection of a defendant's DNA specimen or a criminal trial. *See, e.g.,* TEX. CODE CRIM. PROC. ANN. art. 102.056(a) (money from criminal justice planning fund is used for "state and local criminal justice projects," with not less than twenty percent of such funds directed to juvenile justice programs); TEX. GOV'T CODE ANN. § 772.006(a)(5) (CJD awards grants from criminal justice planning fund "to state agencies, units of local government, school districts, and private, nonprofit corporations"); Press Release, Office of Governor, Gov. Perry Awards $8 Million in Grants to Improve Criminal Justice Systems, *supra* (listing seventy-nine recipients that received more than $8 million in grants from criminal justice planning fund); Press Release, Office of Governor, Gov. Perry Awards $195,000 from State Criminal Justice Planning Funds, *supra* (stating more than $195,000 in grants from criminal justice planning fund awarded to Wood County for Wood County Rural Prosecutor Project and BeyondMissing Inc. for Texas Amber Alert Network); Press Release, Office of Governor, Governor Rick Perry Announces Statewide Grant to Reduce School Dropouts, *supra* (announcing $168,146 criminal justice planning fund grant to Behavioral Health Institute of Waco to assist with "efforts to reduce school failure, dropout rates, and juvenile crime"). Thus, it cannot be reasonably concluded that the revenue dedicated to the criminal justice planning

account provides services that are necessary or incidental to the trial of a criminal defendant's case. *See Carson,* 159 S.W.2d at 127, 130; *see also Salinas,* 426 S.W.3d at 332 (Jamison, J., dissenting) ("Although it appears some of the funds that go to the fair defense account may ultimately help provide counsel for indigent criminal defendants, it does not appear that this is the sole use that can be made for these funds.... It therefore cannot be said that either the training fund or the fair defense account are necessary or incidental expenses in the trial of appellant's criminal case.").

Accordingly, we hold that the portions of article 102.020(a)(1) and article 102.020(h) requiring the collection of the "DNA Record Fee" from appellant to be dedicated to the general revenue fund of the criminal justice planning account constitute an unconstitutional tax. *See Carson,* 159 S.W.2d at 127, 130. *But see O'Bannon,* 435 S.W.3d at 381.

**\*12** We note that our sister court has recently criticized the reasoning of the Texas Court of Criminal Appeals opinion in *Carson* as " 'both abbreviated and bereft of citations to supporting authority.' " *O'Bannon,* 435 S.W.3d at 381 (quoting *Salinas,* 426 S.W.3d at 326). In "[a]ssuming arguendo that *Carson* requires a statute imposing court costs to be 'necessary or incidental to the trial of a criminal case,' " the Fourteenth Court of Appeals held that the defendant's facial constitutional challenge to article 102.020 failed because he did not "establish[ ] how the funds will be used once they are distributed to the state highway fund and the criminal justice planning account." *Id.* at 381–82. It asserted that the defendant merely "infer[ed]" that revenue collected pursuant to article 102.020(a)(1) will "flow 'directly to the executive branch [to be] used for policy purposes' " or to the state highway fund, "not [to] be used for purposes necessary or incidental to DNA collection or testing." *Id.* at 382.

We respectfully disagree with our sister court for the reasons outlined above. In short, we first note that the reasoning of the Texas Court of Criminal Appeals in *Carson* is sound and it constitutes binding precedent upon it and lower courts. *See Reed v. Buck,* 370 S.W.2d 867, 870–71 (Tex.1963) (explaining simply because certain cases had "not been cited in recent years," such "ancient cases" do not "just fade[ ] away"; instead, "unless there is some good reason for overruling them, they should not be disregarded"); *Purchase v. State,* 84 S.W.3d 696, 701 (Tex.App.–Houston [1st Dist.] 2002, pet. ref'd) ("[W]e are bound by the decisions of our state's highest criminal court."). Second, we note that criminal defendants similarly situated to appellant are not asking appellate courts to "infer" how the revenue from the "DNA Record Fee" will be directed. As discussed above, the revenue, by statute, is dedicated by law for expenditures that are far removed from actual "court costs." A plain reading of the pertinent statutes reveals this undeniable fact.

18

We sustain appellant's third issue.[9]

## Conclusion
Having held that the "DNA Record Fee" assessed against appellant pursuant to article 102.020(a)(1) and article 102.020(h) constitutes an unconstitutional tax, we modify each judgment to delete the $250 charge from the assessed court costs. *See Cates v. State,* 402 S.W.3d 250, 252 (Tex.Crim.App.2013) (holding proper remedy when trial court erroneously includes amounts as court costs is to modify judgment to delete erroneous amounts); *Sturdivant v. State,* 445 S.W.3d 435, 443 (Tex.App.– Houston [1st Dist.] 2014, pet. ref d) (holding trial court erroneously included attorney pro tern fees as court costs and modifying judgment accordingly); *see also* TEX. R. APP. P. 43.2(b).

Further, as noted above, having held that there is no basis in the record to support the charge for "serving capias," we also modify each judgment to delete the $50 charge from the assessed court costs. *See French,* 830 S.W.2d at 609 (agreeing "appellate court has authority to reform a [trial court] judgment to ... make the record speak the truth when the matter has been called to its attention by any source"); *Nolan,* 39 S.W.3d at 698 ("An appellate court has the power to correct and reform a trial court judgment 'to make the record speak the truth when it has the necessary data and information to do so ....' " (quoting *Asberry,* 813 S.W.2d at 529)); *see also* TEX. R. APP. P. 43.2(b).

**\*13** We affirm the judgment of the trial court as modified.

Harvey Brown, Justice, Concurring and Dissenting

I join with the Court's conclusions that the trial court did not abuse its discretion in denying Appellant's motion to withdraw his guilty pleas and that the judgment should be modified, striking the unsupported "Sheriff's Fee" assessed in both cases. However, I disagree with the Court's conclusion that the "DNA Record Fee"[1] is unconstitutional.

## Facial Challenge to the DNA Record Fee
Appellant argues that the statute authorizing collection of the fee is facially unconstitutional under the separation-of-powers clause of the Texas Constitution. TEX. CONST. art. II, § 1. Under that provision, a statute authorizing a court to collect costs "neither necessary nor incidental to the trial of a criminal case" is not valid. *Ex parte Carson,* 143 Tex.Crim. 498, 159 S.W.2d 126, 127 (1942). Appellant makes only a facial challenge, which

requires him to "establish that no set of circumstances exists under which the statute will be valid." *Santikos v. State,* 836 S.W.2d 631, 633 (Tex.Crim.App.1992); *see also State v. Rosseau,* 396 S.W.3d 550, 557 (Tex.Crim.App.2013). In my view, Appellant has not shown that every application of the statue violates the *Carson* standard. I would, therefore, affirm the constitutionality of the fee.

## A. Reviewing a facial challenge
When reviewing the constitutionality of a statute, "an appellate court must presume that the statute is valid and that the legislature was neither unreasonable nor arbitrary in enacting it." *Curry v. State,* 186 S.W.3d 39, 42 (Tex.App.–Houston [1st Dist.] 2005, no pet.) (citing *Ex parte Granviel,* 561 S.W.2d 503, 511 (Tex.Crim.App.1978)). A reviewing court must make every reasonable presumption in favor of the statute's constitutionality, unless the contrary is clearly shown. *Granviel,* 561 S.W.2d at 511; *see* TEX. GOV'T CODE ANN. § 311.021 (West 2013) (noting that courts presume "compliance" with Texas and United States Constitutions).

To prevail, the party asserting a facial challenge "must establish that the statute always operates unconstitutionally in all possible circumstances." *Rosseau,* 396 S.W.3d at 557. When construing a statute, courts consider, among other factors, the object sought to be attained by the legislation, laws on the same or similar subjects, and the consequences of a particular construction. TEX. GOV'T CODE ANN. § 311.023 (West 2013); *see State v. Neesley,* 239 S.W.3d 780, 784 (Tex.Crim.App.2007); *Nguyen v. State,* 1 S.W.3d 694, 696–97 (Tex.Crim.App.1999); *see also Dowthitt v. State,* 931 S.W.2d 244, 258 (Tex.Crim.App.1996). If a statute can be reasonably interpreted in a manner that does not offend the constitution, a reviewing court must overrule a facial challenge to the statute's constitutionality. *Curry,* 186 S.W.3d at 42.

## B. Constitutionality of the DNA Record Fee benefiting the criminal-justice planning account
**\*14** Appellant argues that the DNA Record Fee unconstitutionally benefits the criminal-justice planning account because the account is "too remote" to be considered a necessary or incidental cost of prosecuting a criminal case as required under *Carson,* 159 S.W.2d at 127 (concluding that law library fee is remote and unconstitutional). The Court agrees and cites several possible uses of money from the criminal-justice planning account that are not related to the prosecution of a criminal case. This approach is contrary to the standard that applies to claims that a statute is facially unconstitutional because (1) it diminishes the challenger's

burden to demonstrate that all—not some—applications of a statute are unconstitutional; and (2) it runs afoul of precedent by favoring an unconstitutional reading over a constitutional reading when construing statutes. I would construe the criminal-justice planning account in its statutory context, situated among related statutes, and conclude that Appellant has not demonstrated that all applications of the statute are unconstitutional under the *Carson* standard.

The Department of Public Safety ("DPS") is required to collect a DNA specimen from every person charged with certain categories of crimes, including the crime involved here—aggravated sexual assault of a child under 14 years of age—and to create a database cataloging the DNA specimens. TEX. GOV'T CODE ANN. § 411.142 (West 2012) (directing DPS to maintain "computerized database that serves as the central depository in the state for DNA records" that is compatible with FBI's national DNA identification index system); *id.* § 411.1471 (West 2012) (requiring collection of DNA specimens from people charged with or convicted of certain crimes, including aggravated sexual assault of child under 14 years of age); TEX. PENAL CODE ANN. § 22.021 (West Supp.2014) (defining aggravated sexual assault of child under 14 years of age). The criminal-justice planning account allocates funds toward the collection and management of this statewide criminal DNA database. *See* TEX.CODE CRIM. PROC. ANN. art. 102.056 (West Supp.2014). Specifically, subsection (e) of article 102.056 directs the Legislature to

> determine and appropriate the necessary amount from the criminal justice planning account to the criminal justice division of the governor's office for reimbursement in the form of grants to the Department of Public Safety of the State of Texas and other law enforcement agencies for expenses incurred in performing duties imposed on those agencies under Section 411.1471 or Subchapter B–1, Chapter 420, Government Code, as applicable.

*Id.*

After looking outside the record to press releases and web sites, the Court insists that "it cannot be assumed that DPS was automatically reimbursed by virtue of the 'DNA Record Fee' for any expenses associated with the collection of [Appellant's] sample" and therefore the fee is an unconstitutional tax. This conclusion does not account for the remainder of subsection (e), which continues:

> The criminal justice division

through a grant [of money from the criminal-justice planning account] shall reimburse the law enforcement agency for the costs not later than the 30th day after the date the certified statement is received. If the criminal justice division does not reimburse the law enforcement agency before the 90th day after the date the certified statement is received, the agency is not required to perform duties imposed under Section 411.1471 or Subchapter B–1, Chapter 420, Government Code, as applicable, until the agency has been compensated for all costs for which the agency has submitted a certified statement under this subsection.

*Id.* Thus, the Court's skepticism is unjustified given the wording of the statute regarding reimbursement to fund the DNA project.

The Court also insists that, even if DPS were reimbursed, the fee is nevertheless unconstitutional because the criminal-justice planning account funds other unrelated projects. Following this analysis, it would be enough for a party bringing a facial constitutional challenge to show that *some* possible applications of a statute are unconstitutional to justify invalidating every application of that statute. That is the wrong standard. *See Santikos,* 836 S.W.2d at 633 ("[T]he challenger must establish that no set of circumstances exists under which the statute will be valid."). While money from the criminal-justice planning account apparently funds other programs in addition to the DNA database, Appellant presents no evidence that the DNA Record Fee revenue does anything more than reimburse the criminal-justice planning account for its DNA-database expenditures. Appellant appears to concede that reimbursement for these expenditures would not violate *Carson.* I agree.

**\*15** I would hold that collecting the DNA Record Fee to benefit the criminal-justice planning account is constitutional because these funds may be allocated to the statewide criminal DNA database. Because such an allocation would be constitutional, Appellant fails to meet his burden of showing that every application of the statute would result in constitutional injury. *See Rosseau,* 396 S.W.3d at 557 (noting moving party has burden of demonstrating statute's unconstitutionality in "all its possible applications."). Accordingly, I would conclude that Appellant has failed to demonstrate that the portion of the DNA Record Fee that benefits the criminal-justice planning account is an unconstitutional tax.

20

**C. Constitutionality of the DNA Record Fee benefiting the state highway fund**

Likewise, Appellant has not demonstrated that the portion of the DNA Record Fee that benefits the state highway fund is facially invalid. Pursuant to article 102.020(h) of the Texas Code of Criminal Procedure, a portion of collected DNA Record Fee revenue goes into the state highway fund. "[M]oney deposited to the state highway fund under ... 102.020(h), Code of Criminal Procedure, may be used only to defray the cost of administering [subchapter G of chapter 411] and Section 411.0205" of the Texas Government Code. TEX. GOV'T CODE ANN. § 411.145 (West 2012). Subchapter G governs the collection and management of DNA samples, including Appellant's, by DPS. *See* TEX. GOV'T CODE ANN. § 411.1471. Section 411.0205 regulates the accreditation of forensic crime laboratories by DPS. TEX. GOV'T CODE ANN. § 411.0205 (West 2012). Thus, under the Texas Government Code, the portion of the DNA Record Fee credited to the state highway fund is used to defray the costs associated with collecting, storing, and testing DNA samples.

The Court relies on section 222.002 of the Texas Transportation Code, which states that money in the state highway fund not earmarked for public roadways "*may* be used for any function performed by" the Texas Department of Transportation ("TxDOT"). TEX. TRANSP. CODE ANN. § 222.002 (West 2011) (emphasis added). TxDOT does not manage DNA-sample collection, management, or testing. But TxDOT does not have exclusive access to the state highway fund. Rather, the Transportation Code simply states a general rule that TxDOT "may" access the fund. In contrast, the Government Code provides a specific rule that money from the DNA Record Fee in the state highway fund "may be used *only*" by DPS to defray the cost of administering the DNA database. TEX. GOV'T CODE ANN. § 411.145 (emphasis added).

When two statutes concern the same issue, the two should be read together as one law, and an appellate court should attempt to harmonize any conflicting provisions. *Garrett v. State,* 424 S.W.3d 624, 629 (Tex.App.–Houston [1st Dist.] 2013, pet. ref d). If this is not possible, specific rules prevail over general provisions, absent contrary legislative intent. *Id.*; *Azeez v. State,* 248 S.W.3d 182, 192 (Tex.Crim.App.2008). In light of these principles, I would hold that the statute specifically assigning DNA Record

Fee revenue in the state highway fund to DPS for DNA sampling and crime-lab accreditation prevails over the general statute relied upon by the Court.

I would further hold that paying for DNA sampling and crime-lab accreditation is a valid, constitutional use of the DNA Record Fee under *Carson.* The trial court ordered Appellant to surrender a DNA sample as part of the investigation of this case. The fee is therefore "necessary or incidental" to the trial of Appellant's case. *See generally* TEX. GOV'T CODE ANN. § 411.143(a) (West 2012) ("The principal purpose of the DNA database is to assist a federal, state, or local criminal justice agency in the investigation or prosecution of sex-related offenses or other offenses in which biological evidence is recovered.").

**\*16** The Court concludes that the fee is an unconstitutional tax because the revenue could possibly benefit other activities unrelated to the statewide DNA database. In doing so, the Court again relies on web sites outside the record because Appellant has provided no record evidence of how the funds are expended and relieves Appellant of his burden when bringing a facial constitutional challenge.

Because Appellant has not demonstrated that every application of the statutes assigning DNA Record Fee revenue to the state highway fund would be unconstitutional, I would conclude that Appellant did not demonstrate that the portion of the DNA Record Fee that benefits the state highway fund is facially unconstitutional.

**Conclusion**

Having determined that both portions of the DNA Record Fee—the 65% that benefits the criminal-justice planning account and the 35% that benefits the state highway fund—are sufficiently related to the prosecution of a criminal case, I would conclude that Appellant failed to satisfy his burden of demonstrating that the DNA Record Fee is facially unconstitutional. Accordingly, I respectfully dissent.

Footnotes

[1]    *See* TEX. PENAL CODE ANN. § 22.021 (Vernon Supp.2014).

[2]    *See* TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(2) (Vernon Supp.2014) (imposing $50 charge "for executing or processing an issued arrest warrant, capias, or capias pro fine").

[3]    *See id.* art. 102.011(a)(1) (imposing $5 charge for arrest without warrant).

21

[4] *See* TEX. CODE CRIM. PROC. ANN. art. 102.020(a)(1) (Vernon Supp.2014) (authorizing collection of $250 fee from persons convicted of offenses listed in Texas Government Code section 411.1471(a)(1)). We refer to the fee assessed pursuant to article 102.020(a)(1) as a "DNA Record Fee" because it is so labeled in the trial court clerk's bill of costs in each case.

[5] Although our dissenting colleague calls into question the reliance on information available through the Texas Department of Transportation's website, we note that this Court and others have repeatedly taken judicial notice of information available on various websites, including governmental websites. *See* TEX. R. EVID. 201; *see, e.g., Payan v. State,* 199 S.W.3d 380, 383 & n. 4 (Tex.App.–Houston [1st Dist.] 2006, pet. ref'd) (taking judicial notice of information available on "[t]he State Library and Archives Commission website"); *see also Chen v. Hernandez,* No. 03–11–00222–CV, 2012 WL 3793294, at *14 (Tex. App.–Austin Aug. 28, 2012, pet. denied) (mem. op.) (noting trial court took judicial notice of "government websites," including "website for the U.S. Department of State"); *Hayden v. State*, 155 S.W.3d 640, 647 (Tex.App.–Eastland 2005, pet. ref'd) (taking judicial notice of information available on "website of the United States Naval Observatory").

[6] *See Reed v. Buck,* 370 S.W.2d 867, 870–71 (Tex.1963) (explaining simply because certain cases had "not been cited in recent years," such "ancient cases" do not "just fade[ ] away"; instead, "unless there is some good reason for overruling them, they should not be disregarded"); *Purchase v. State,* 84 S.W.3d 696, 701 (Tex.App.–Houston [1st Dist.] 2002, pet. ref'd) ("[W]e are bound by the decisions of our state's highest criminal court.").

[7] We also note that under chapter 411, subchapter G, the DPS director is assigned numerous responsibilities, including "develop[ing] biennial plans" to "improve the reporting and accuracy of the DNA [D]atabase," "audit[ing] the records, reports, procedures, or other quality assurance matters of any DNA laboratory," and providing "training for collection of DNA samples," none of which are responsibilities that are "necessary [or] incidental to the trial of a criminal case." *See* TEX. GOV'T CODE ANN. §§ 411.142(e), 411.144(c), 411.146(b) (Vernon 2012); *Ex Parte Carson,* 143 Tex.Crim. 498, 159 S.W.2d 126, 127, 130 (1942) (discounting notion funds for training constitute legitimate court costs).

[8] We again note that our dissenting colleague calls into question the reliance on information available through the website of the Office of the Governor. However, as stated previously, this Court and others have repeatedly taken judicial notice of information available on various websites, including governmental websites. *See* TEX. R. EVID. 201; *see, e.g., Payan,* 199 S.W.3d at 383 & n. 4; *see also Chen,* 2012 WL 3793294, at *14; *Hayden,* 155 S.W.3d at 647.

[9] In his fourth issue, appellant argues that the trial court erred in not granting him a hearing on his motions for new trial and in arrest of judgment because "[t]o properly challenge the constitutionality of the DNA fees and the faulty Sheriff's fee, a hearing was necessary." Appellant filed his motions in the trial court asserting that "[t]he fees from the Sheriff reflected on the bill[s] of costs are wholly unsupported and erroneous" and "[t]he DNA court costs are unconstitutional." Given our disposition of appellant's second and third issues, we do not reach the issue of whether the trial court erred in not granting appellant a hearing on his motions for new trial and in arrest of judgment. *See* TEX. R. APP. P. 47.1.

[1] *See* TEX. CODE CRIM. PROC. ANN. art. 102.020(a)(1) (West Supp.2014) ("A person shall pay as a cost of court: (1) $250 on conviction of an offense listed in Section 411.1471(a)(1), Government Code").

22