**Opinion issued December 3, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-14-00675-CR**

**NO. 01-14-00676-CR**

———————————

**ISREAL MONTOYA ALCARAZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1394947 & 1394948**

---

**CONCURRING OPINION**

*To no one will We sell, to none will We deny or delay, right or justice.*[1]

---

[1]    MAGNA CARTA, ch. 40, in A.E. DICK HOWARD, MAGNA CARTA: TEXT & COMMENTARY 45 (1964).

I join the majority opinion and concur in the judgment of this Court, but write separately to explain why I must do so in light of the Texas Court of Criminal Appeals' recent and extraordinary holding in *Peraza v. State*:

> [I]f [a] statute under which *court costs* are assessed (or an interconnected statute) provides for an allocation of such *court costs* to be expended for legitimate *criminal justice purposes*, then the statute allows for a constitutional application that will not render the courts['] tax gatherers in violation of the *separation of powers clause*. A criminal justice purpose is one that *relates to the administration of our criminal justice system*. Whether a criminal justice purpose is "legitimate" is a question to be answered on a statute-by-statute/case-by-case basis.

467 S.W.3d 508, 517–18 (Tex. Crim. App. 2015) (emphasis added) (overruling *Ex Parte Carson*, 143 Tex. Crim. 498, 159 S.W.2d 126 (1942) and *Peraza v. State*, 457 S.W.3d 134 (Tex. App.—Houston [1st Dist.] 2014), *rev'd*, 467 S.W.3d 503 (Tex. Crim. App. 2015)).

In so holding, the court of criminal appeals expressly and specifically "reject[ed]" its long-standing "requirement that, in order to pass constitutional muster, [a] statutorily prescribed court cost must be 'necessary' or 'incidental' to the 'trial of a criminal case.'" *Id.* at 517 (quoting *Carson*, 159 S.W.2d at 130). In *Peraza*, the court recognized that, given the express language of the Separation of Powers Provision of the Texas Constitution,[2] Texas's Judicial Department of

---

[2] TEX. CONST. art. II, § 1.

Government[3] may only collect "legitimate" "court costs" from defendants in criminal cases. *Id.*

However, the court of criminal appeals then decided to change the meaning of the words "court costs" from their "common[]" and "easily understood" definition to something other than *what they actually mean*: actual and real "court costs," i.e., "cost[s] 'necessary' and 'incidental' to the 'trial of a criminal case.'" *See id*. at 517 (quoting *Carson*, 159 S.W.2d at 130). In other words, because the court found the actual definition of "court costs" to be "***too limiting***" for its purposes, the court judicially created a new definition for these words so that they might include any monies that the Texas Legislature wants the judiciary to collect from criminal defendants. These monies then may be "***expended*** for legitimate criminal justice purposes," i.e., purposes that *actually have no relationship whatsoever to either* the word "courts" or the word "costs." *Id*. (emphasis added). Further, the court defined "criminal justice purpose" as anything that somehow "***relates*** to the administration of our criminal justice system." *Id*. at 517–18 (emphasis added).

Using its newly created definitions, the Texas Court of Criminal Appeals then reasons that Texas's Legislative Department of Government[4] may now put to

---

[3] *See id.* art. V; *see also id.* art. II, § 1 (dividing "[t]he powers of the Government of the State of Texas . . . into three distinct departments," including Judicial Department).

use the state's Judicial Department to collect the money of criminal defendants to fund Texas's Executive Department of Government,[5] which includes police, prosecutors, and jails and prisons, by "***recoup[ing]***" the costs of funding "our criminal justice system." *Id*. at 517 (emphasis added). Stated another way, under the court of criminal appeals' newly crafted definitions and logic, the judiciary, at the behest and direction of the Texas Legislature, may now be used to collect from criminal defendants revenue that will not in fact be spent on either courts or costs, or even the administration of our criminal justice system, but rather for general purposes such as the state highway fund. *See id*. at 519–21 (upholding, as constitutional, "the portion of the DNA Record Fee that benefits the state highway fund"); *see also* TEX. CODE CRIM. PROC. ANN. art. 102.020(h) (Vernon Supp. 2015) (thirty-five percent of revenue received from DNA Record Fee dedicated to state highway fund, with remaining sixty-five percent of revenue dedicated to general revenue fund of state's criminal justice planning account).

Respectfully, the attempt by the Texas Court of Criminal Appeals to change the meaning of the words "court costs" defies logic and renders the words "court costs" meaningless. And the court's holding, in regard to defendants in criminal

---

[4] *See id.* art. III; *see also id.* art. II, § 1 (dividing "[t]he powers of the Government of the State of Texas . . . into three distinct departments," including Legislative Department).

[5] *See id.* art. IV; *see also id.* art. II, § 1 (dividing "[t]he powers of the Government of the State of Texas . . . into three distinct departments," including Executive Department).

4

cases, nullifies both the Separation of Powers Provision[6] and the Open Courts Provision[7] of the Texas Constitution, which we, as judges, are sworn to uphold.

First, the court of criminal appeals' attempt to change the meaning of the "easily understood" words "court costs" simply because it finds their actual meaning "too limiting" for its purposes is patently unreasonable. As emphasized by D. Q. McInerny:

> Being logical presupposes our having a sensitivity to language and a knack for its effective use, *for logic and language are inseparable*. It also presupposes our having a healthy respect for the firm factualness of the world in which we live, *for logic is about reality*. Finally, being logical presupposes a lively awareness of how the facts that are our ideas relate to the facts that are the objects in the world, *for logic is about truth*.

D. Q. MCINERNY, BEING LOGICAL, A GUIDE TO GOOD THINKING 3 (2005) (emphasis added).

Before the court of criminal appeals' recent attempt to change their actual and real meaning, the words "court costs" have universally meant "[t]he charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees." BLACK'S LAW DICTIONARY 422 (10th ed. 2009). As noted by the court itself in *Peraza*, it has long recognized that "court costs" must "be 'necessary' and 'incidental' to 'the trial of a criminal case,'" and it had also, as recently as 2009,

---

[6]     *See id.* art. II, § 1.

[7]     *See id.* art. I, § 13.

5

reiterated the obvious—that "court costs were intended by the Legislature to be 'recoupment of the costs of *judicial resources expended in connection with the trial of a case.'*" *Peraza*, 467 S.W.3d at 515–17 (emphasis added) (first quoting *Carson*, 159 S.W.3d at 130; and then quoting *Weir v. State*, 278 S.W.3d 364, 366 (Tex. Crim. App. 2009)).

And the court of criminal appeals' previous and long-held understanding of the words "court costs," prior to its opinion in *Peraza*, was in accord with the Texas Supreme Court's understanding:

> "[C]ourt costs," [are] defined by Black's Law Dictionary to include [t]he charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees, or to litigation costs, like [t]he expenses of litigation, prosecution, or other legal transaction, esp[ecially] those allowed in favor of one party against the other. . . .
>
> "Costs," when used in legal proceedings, ***refer not just to any expense, but to those paid to courts or their officers***—and costs generally do not include attorney's fees. As we have recognized for decades, the term costs is generally understood [to mean] the fees or compensation fixed by law collectible by the officers of court, witnesses, and such like items, and does not ordinarily include attorney's fees which are recoverable only by virtue of contract or statute.

*In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 175 (Tex. 2013) (third, fourth, fifth, and sixth alterations in original) (emphasis added) (internal quotations and citations omitted). Moreover, the legislature itself, in the Texas Civil Practice and Remedies Code, has explained that, in a civil case, a judge may include in any order or judgment all "court costs," including the following:

6

(1)     fees of the clerk and service fees due the county;

(2)     fees of the court reporter for the original of stenographic transcripts necessarily obtained for use in the suit;

(3)     masters, interpreters, and guardians ad litem appointed pursuant to these rules and state statutes; and

(4)     such other costs and fees as may be permitted by these rules and state statutes.

TEX. CIV. PRAC. & REM. CODE ANN. § 31.007(b) (Vernon 2015).[8]  Thus, the court of criminal appeals' newly crafted definition of "court costs" is completely at odds not only with its own precedent, but also with the precedent of the Texas Supreme Court and the Texas Legislature's own previous understanding of those words.

---

[8]     *See also Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, No. 03-10-00826-CV, 2014 WL 6705741, at *4 (Tex. App.—Austin Nov. 14, 2014, no pet.) (mem. op.) ("Under the Texas Civil Practice and Remedies Code, taxable court costs include clerk fees and service fees due the county, which include, for example, filing fees, service fees, jury fees, and subpoena fees.  Statutorily allowed costs also include court reporter fees for original stenographic transcripts.  Thus, Texas courts have held that expenses related to depositions, including a deposition on written questions, are taxable court costs.  The costs for video depositions or copies of depositions or transcripts, however, are not recoverable as court costs." (internal citations omitted)); *Allen v. Crabtree*, 936 S.W.2d 6, 8 (Tex. App.—Texarkana 1996, no writ) ("Both the Texas Civil Practice and Remedies Code and the Texas Rules of Civil Procedure specify items recoverable as costs. The Civil Practice and Remedies Code lists the following items a court may include in awarding costs:  (1) fees of the clerk and service fees due the county; (2) fees of the court reporter for the original of stenographic transcripts necessarily obtained for use in the suit; (3) masters, interpreters, and guardians ad litem appointed pursuant to these rules and state statutes; and (4) such other costs and fees as may be permitted by these rules and state statutes.  Rule 206 of the Rules of Civil Procedure authorizes allowance of the cost of exhibits attached to an original deposition.  Also recoverable are deposition costs and filing, court reporter, transcript, and subpoena/citation fees." (footnote and internal citations omitted)).

Second, in regard to the Separation of Powers Provision of the Texas Constitution,[9] the court, in *Peraza*, did not address the untenable inconsistency between its "reject[ion]" of its long-standing precedent and the Separation of Powers Provision's express requirements. *See Peraza*, 467 S.W.3d at 515–18. The Texas Constitution, unlike the United States Constitution, contains a specific, strongly-worded provision, entitled "The Powers of Government," which mandates a strict separation of powers among the state's Legislative, Executive, and Judicial Departments. *See* TEX. CONST. art. II, § 1. And the drafters of the Texas Constitution thought the provision so important that they placed it in article II, ahead of the separate articles establishing the Legislative, Executive, and Judicial Departments of the state's government. *See id.* arts. II, III, IV, V. Only the Texas Bill of Rights, contained in article I of the Constitution, precedes the Separation of Powers Provision in prominence of place. *See id.* art. I.

Our Separation of Powers Provision explicitly states:

The powers of the Government of the State of Texas shall be divided into three *distinct* departments, each of which *shall be confided to a separate body of magistracy*, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; *and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others*, except in the instances herein expressly permitted.

---

[9] *See* TEX. CONST. art. II, § 1

8

*Id.* art. II, § 1 (emphasis added).  Under the express language of this provision, the Judicial Department of Government absolutely may not exercise any powers that belong to the Executive or Legislative Departments of Government and those departments may not force the Judicial Department to do so.

In *Carson*, the court of criminal appeals considered the issue of whether it was constitutionally permissible to impose a $1 fee as a court cost in all cases filed in counties with more than eight district courts or more than three county courts at law.  159 S.W.2d at 127.  The revenue collected from the $1 fee was directed to the "County Law Library Fund" and "available to be used for certain costs and expenses in acquiring, maintaining and operating a law library available to the judges of the courts and to the attorneys of litigants in the courts."  *Id.* (internal quotations omitted).  The court held that the fee constituted an unconstitutional tax, not a legitimate court cost, because it was "neither necessary nor incidental to the trial of a criminal case."  *Id.* at 127, 130.

The court's reasoning and holding in *Carson* were in harmony with the express language of our Separation of Powers Provision that "no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others."  TEX. CONST. art. II, § 1.  In fact, the court's reasoning and holding in *Carson* served to protect the legitimate powers, function, and duties of the judiciary and to insure that this department of

9

government is not rendered subservient to the Legislative and Executive Departments to raise revenue to make up for state budget shortfalls.

Under our constitution, "[t]he judicial power of th[e] State" is "vested" in our constitutionally established courts. *Id.* art. V, § 1. And our judiciary, as a separate, co-equal department of government, acts as a check on the power of the other departments, safeguarding the rule of law and ensuring public justice through an independent, fair, and competent application of the law for the resolution of disputes. Simply put, judges are not tax collectors, and the Texas Legislature may not legally make them into such to fund the needs of the Executive Department.[10] If the Texas Legislature wants to raise taxes, it must do so in accord with the Texas Constitution.

Regardless, the court of criminal appeals, in "reject[ing]" its long-standing "requirement that, in order to pass constitutional muster, the statutorily prescribed court cost must be 'necessary' or 'incidental' to the 'trial of a criminal case,'" found that although the words "'necessary' and 'incidental' are commonly used and easily understood," "they are ***too limiting***." *Peraza*, 467 S.W.3d at 517 (emphasis added) (quoting *Carson*, 159 S.W.2d at 130). And without citation to authority, it opined that since *Carson*, "the prosecution of criminal cases and our

---

[10]    The Comptroller of Public Accounts, firmly established under the Texas Constitution in the "Executive Department" of our state government, is the state's chief tax collector. *See id.* art. IV, §§ 1, 23 (establishing Comptroller of Public Accounts as an officer of Executive Department).

10

criminal justice system have *greatly evolved*" and the "legislature has developed statutorily prescribed court costs *with the intention of reimbursing the judicial system for costs* incurred in the administration of the criminal justice system." *Id.* (emphasis added). Based on these premises, the court concluded:

> To require such **costs** to be 'necessary' or 'incidental' to the trial of a criminal case in order to be constitutionally valid ignores the legitimacy of costs that, **_although not necessary to, or an incidental expense of, the actual trial of a criminal case_**, may nevertheless be directly related to the recoupment of costs of judicial resources expended in connection with the prosecution of criminal cases within our criminal justice system.

*Id.* (emphasis added).

Respectfully, the Texas Court of Criminal Appeals' reasoning and holding in *Peraza*, unlike that in *Carson*, directly conflicts with the express language of our Separation of Powers Provision that "no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others." TEX. CONST. art. II, § 1. And, by allowing Texas's Legislative Department to use the Judicial Department to collect monies from criminal defendants for purposes "not necessary to, or an incidental expense of, the actual trial of a criminal case," the court of criminal appeals has failed in its duty to act as a check on the power of the legislature. *See Peraza*, 467 S.W.3d at 517.

Although the money and resources needed to finance the machinery of Texas's "criminal justice system," the bulk of which consists of the Executive

11

Department's law enforcement agencies, i.e., police, prosecutors, and jails and prisons, may have grown exponentially since the court decided *Carson*,[11] the fact

---

[11]   In 1945, three years after the Texas Court of Criminal Appeals decided *Ex parte Carson*, 143 Tex. Crim. 498, 159 S.W.2d 126 (1942), Texas's prison-inmate population was 3,270. Paul M. Lucko, *Prison System*, *in* 5 THE NEW HANDBOOK OF TEX. 341, 343 (Ron Tyler et al. eds., 1996). In 2014, it was 166,043, more than any other state in the country. E. Ann Carson, *Prisoners in 2014*, U.S. DEP'T OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, BUREAU OF JUSTICE STATISTICS 3 (Sept. 2015), http://www.bjs.gov/content/pub/pdf/p14.pdf. And United States Senator John Cornyn has noted that although the federal-prison population, from 1940 through 1980, was stable at approximately 24,000 inmates, today there are over 200,000 men and women in federal prison. John Cornyn & Sheldon Whitehouse, *How to Cut Crime and Save Money*, CNN.COM (Oct. 21, 2015, 4:50 PM), http://www.cnn.com/2015/10/21/opinions/cornyn-whitehouse-criminal-justice-ref orm/.

Indeed, noting that "our prisons are overcrowded" and our criminal justice system "often perpetuates a vicious cycle in which prisoners are released unprepared to succeed," Senator Cornyn has recently introduced "historic bipartisan legislation to reform our nation's criminal justice system"—the Sentencing Reform and Corrections Act of 2015. *Id.*; *see also* Sentencing Reform and Corrections Act of 2015, S. 2123, 114th Cong. (2015).

As of 2010, the United States was spending more than $80 billion on criminal corrections expenditures at federal, state, and local levels. Melissa S. Kearney et al., *Ten Economic Facts about Crime and Incarceration in the United States*, THE HAMILTON PROJECT 2, 13 (May 2014), http://www.brookings.edu/ ~/media/research/files/papers/2014/05/01%20crime%20facts/v8_thp_10crimefacts .pdf (noting "more than 90 percent" of $80 billion corrections expenditures "occur[ed] at state and local levels"); Aimee Picchi, *The High Price of Incarceration in America*, CBSNEWS.COM (May 8, 2014, 5:53 AM), http://www.cbsnews.com/news/the-high-price-of-americas-incarceration-80-billio n/ (explaining United States spent more than $80 billion on corrections expenditures at federal, state, and local levels in 2010); *see also* Matt Vespa, *Our Ruinously Expensive Criminal Justice System*, TOWNHALL.COM (July 17, 2015), http://townhall.com/tipsheet/mattvespa/2015/07/17/criminal-justice-event-n20260 28 (noting "our criminal justice system has seen an explosion in government spending on the federal level amounting to an 800 percent increase"). And one study has found that "[c]rime-related expenditures generate a significant strain on state and federal budgets" and "[t]oday's high rate of incarceration is considerably

remains that the People of the State of Texas have not amended the Texas Constitution to allow Texas's Legislative Department to employ the Judicial Department to shake down litigants to balance the state's budget and fund the Executive Department. In contrast, the court's reasoning and holding in *Carson* served to protect the legitimate powers, function, and duties of the judiciary and to

---

costly . . . *with state governments bearing the bulk of the fiscal burden*." Kearney et al., *supra*, at 12–13 (emphasis added).

For instance, in 2012, Texas spent $50.04 per person, per day to incarcerate an individual in a Texas prison. *See* LEGISLATIVE BUDGET BD., CRIMINAL JUSTICE UNIFORM COST REPORT, FISCAL YEARS 2010 TO 2012 8 (Jan. 2013), http://www.lbb.state.tx.us/Public_Safety_Criminal_Justice/Uniform_Cost/Crimina l%20Justice%20Uniform%20Cost%20Report%20Fiscal%20Years%202010%20to %202012.pdf. At that time, there were approximately 137,095 individuals incarcerated in Texas prisons, meaning the state was paying $6,860,233.80 per day to imprison these individuals. *See id.*; TEX. DEP'T OF CRIMINAL JUSTICE ("TDCJ"), FISCAL YEAR 2012 STATISTICAL REPORT 1, http://www.tdcj.state.tx.us /documents/Statistical_Report_FY2012.pdf.

According to Houston Police Department Chief Charles McClelland, one reason for the explosion in government spending on our criminal justice system is "mandatory sentencing laws for minor crime offenses, drug offenses, for people who are really not the greatest threat to community safety." St. John Barned-Smith, *HPD's Chief Seeks Reform*, HOUS. CHRON., Nov. 22, 2015, at B1. The prosecution of such cases requires "massive amounts of law enforcement resources." *Id.* For example, of the 137,095 individuals in Texas prisons in 2012, 20,313 of them were incarcerated for drug-related offenses, approximately fifty-one percent of which were possession-only drug offenses. *See* TDCJ, *supra*, at 1, 9 (10,331 individuals incarcerated in Texas prisons in 2012 for possession-only drug offenses). Thus, based on these figures, Texas, in 2012, spent $516,963.24 per day to incarcerate individuals in Texas prisons for possession-only offenses. *See* LEGISLATIVE BUDGET BD., *supra*, at 8; TDCJ, *supra*, at 9. And this amount does not include the $144,658.80 also spent per day by the state to incarcerate individuals in Texas state jails for possession-only drug offenses. *See* LEGISLATIVE BUDGET BD., *supra*, at 8 (costs state $42.90 per person, per day to incarcerate individual in Texas state jail); TDCJ, *supra*, at 9 (in 2012, 3,372 individuals incarcerated in Texas state jails for possession-only drug offenses).

insure that the third branch of government is not rendered subservient to the Legislative and Executive Departments and ordered to raise revenue to make up for state budget shortfalls.

Third and most important, in regard to the Open Courts Provision of the Texas Constitution,[12] the Texas Court of Criminal Appeals did not address the untenable inconsistency between its new holding in *Peraza* and the express language of that provision and well-established Texas Supreme Court precedent. In *LeCroy v. Hanlon*, the supreme court explained that the Open Courts Provision's "wording and history demonstrate the importance of the right of access to the courts," which "has been at the foundation of the American democratic experiment." 713 S.W.2d 335, 339 (Tex. 1986). In fact, the provision "originates from Chapter 40 of Magna Carta, the great charter of English liberties obtained from King John in 1215," which expressly guaranteed: "To no one will We sell, to none will We deny or delay, right or justice." *Id.*; MAGNA CARTA, ch. 40, in A.E. DICK HOWARD, MAGNA CARTA: TEXT & COMMENTARY 45 (1964).

Specifically, our Open Courts Provision provides:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. *All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law*.

---

[12] *See* TEX. CONST. art. I, § 13.

TEX. CONST. art. I, § 13 (emphasis added). And the provision "guarantees all litigants the right to redress their grievances—to use a popular and correct phrase, *the right to their day in court*." *LeCroy*, 713 S.W.2d at 341 (emphasis added).

Because this right is a "substantial" constitutional right, "the legislature cannot arbitrarily or unreasonably interfere with a litigant's right of access to the courts." *Id*. Thus, to determine whether a statute passed by the Texas Legislature violates the Open Courts Provision, a court must balance "the legislature's actual purpose in enacting [the] law against that law's interference with the individual's right of access to the courts." *Id*. And the state bears the burden of "show[ing] that the legislative purpose outweighs the interference with the individual's right of access." *Id*. Notably, in *Peraza*, the court of criminal appeals did not apply this test, and, as illustrated in *LeCroy*, the state cannot meet its burden.

In *LeCroy*, the Texas Supreme Court addressed the issue of "whether a filing fee that goes to state general revenues is an arbitrary and unreasonable interference with the right of access to the court." *Id*. As noted by the supreme court:

> The major defect with the filing fee is that *it is a general revenue tax on the right to litigate*: the money goes to other statewide programs besides the judiciary.

*Id*. (emphasis added). Thus, the court held that "filing fees that go to state general revenues—in other words *taxes on the right to litigate that pay for other programs besides the judiciary*—are unreasonable impositions on the state constitutional

15

right of access to the courts." *Id*. at 342 (emphasis added). And, regardless of their size, such court fees are unconstitutional because such "*fees cannot go for non-court-related purposes.*" *Id*. (emphasis added). As further explained and emphasized by the supreme court:

> Court filing fees and taxes may be imposed *only for purposes relating to the operation and maintenance of the courts . . . .* [For example,] [d]issolution-of-marriage petitioners should not be required as a condition to filing, to support a general welfare program that relates neither to their litigation nor to the court system. *If the right to obtain justice freely is to be a meaningful guarantee, it must preclude the legislature from raising general revenue through charges assessed to those who would utilize our courts*.

*Id*. (first alteration in original) (emphasis added) (internal quotations and citations omitted).

In response to the State's argument that "a tax on individual litigants is reasonable as long as the amount raised for general revenues is less than the amount spent from general revenues on the judiciary," the supreme court noted that such an argument utilizes "the wrong perspective: a societal perspective." *Id*. Instead, it explained that "[w]hen individual rights guaranteed by the state constitution are involved, *an individual rights perspective [must be] used.*" *Id*. (emphasis added). And from that perspective, "litigants [are required to] pay a tax for general welfare programs as a condition to being allowed their right of access to the courts. This [is precisely what] the [O]pen [C]ourts [P]rovision prohibits." *Id*.

In the present case, the Texas Legislature has dedicated thirty-five percent of the $250 DNA Record Fee challenged by appellant, Isreal Montoya Alcaraz, to the state highway fund, with the remaining sixty-five percent dedicated to the general revenue fund of the state's criminal justice planning account. *See* TEX. CODE CRIM. PROC. ANN. art. 102.020(h). As previously noted by this Court, the DNA Record Fee, collected by Texas courts from criminal defendants, does not relate to the trial of a defendant's criminal case. *See Peraza*, 457 S.W.3d at 141–50. In fact, the DNA Record Fee, dedicated to statewide programs outside of the judiciary, actually has nothing to do with the operation and maintenance of Texas's courts. *See id.* Like the filing fee in *LeCroy*, the DNA Record Fee challenged here is nothing more than a general revenue tax on the right to one's day in court and is, thus, an unconstitutional imposition on an individual's constitutional right of access to the courts. *See LeCroy*, 713 S.W.2d at 341.

Notably, the Texas Court of Criminal Appeals' attempt to alter the meaning of the words "court costs" to accommodate the DNA Record Fee does not change *the reality* that the monies collected through this fee actually "go for non-court related purposes" in direct violation of the Texas Constitution's Open Courts Provision. *Id*. at 342; *see also* TEX. CONST. art. I, § 13. Simply put, there is no way, in intellectual honesty, to reconcile the court of criminal appeals' remarkable

holding in *Peraza* with our Open Courts Provision and the well-established precedent of the Texas Supreme Court in *LeCroy*.

When the legislature oversteps its bounds and passes a law that violates the Texas Constitution, there is no shame in a Texas court saying so. As Justice Franklin Spears wrote:

> [The legislature may not] force the judiciary into the role of a subordinate and supplicant governmental service—in effect, a mere agency. The judiciary is not an agency, but is a constitutionally established separate, equal and independent branch of government.
>
> . . . .
>
> . . . The judicial power provides a check on the abuse of authority by other governmental branches. If the courts are to provide that check, they cannot be subservient to the other branches of government but must ferociously shield their ability to judge independently and fairly. This is the essence of our very existence; we owe the people of Texas no less than our unflinching insistence on a true tripartite government. It is the responsibility of this court to preserve this constitutional framework.
>
> . . . The judiciary may often be denominated as the "third" branch of government, but that does not mean it is third in importance; it is in reality one of three equal branches. As such, the judiciary is an integral part of our government and cannot be impeded in its function . . . .

*Mays v. Fifth Court of Appeals*, 755 S.W.2d 78, 80–81 (Tex. 1988) (Spears, J., concurring) (footnotes and internal quotations omitted).

Indeed, Texas courts have "the power and *duty* to protect" the constitutionally "guaranteed rights of all Texans." *LeCroy*, 713 S.W.2d at 339

18

(emphasis added); *see also* TEX. CONST. art. V, § 1. If lawyers and judges want to preserve and protect the 800-year-old legacy of Magna Carta, we must be ever vigilant in the performance of our duties as stewards and "guardians of the law."[13] And, as noted above, "if the right to obtain justice _**freely**_ is to be a meaningful guarantee, [we] must preclude the legislature from raising general revenue through charges assessed to those who would utilize our courts." *LeCroy*, 713 S.W.2d at 342 (emphasis added) (internal quotations and citations omitted).

In sum, the attempt by the Texas Court of Criminal Appeals, in *Peraza*, to change the meaning of the words "court costs" to accommodate the challenged DNA Record Fee defies logic and renders the words meaningless. And the court's holding that the Texas Legislature may now use the judiciary to collect monies from defendants in criminal cases to fund "the administration of our criminal justice system," which now apparently includes the state highway fund, by Texas's Executive Department nullifies both the Separation of Powers and Open Courts Provisions of the Texas Constitution. Moreover, requiring criminal defendants to pay a tax on their right to be heard according to law, is not just unseemly, but, as noted by the Texas Supreme Court, violates the fundamental principle of the

---

13    *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT preamble ¶ 1, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon 2013). Judges must always "comply with the law" and "accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law." TEX. CODE JUD. CONDUCT, Canons 2(A), 3(B)(8), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B (Vernon 2013).

Magna Carta that "To no one will We sell, to none will We deny or delay, right or justice."[14] It, thus, further violates the right to due process of law and the right of equal protection of the law. *See* U.S. CONST. amends. V, XIV. Simply put, Texas judges should not be in the business of selling access to justice.

For these reasons, I respectfully request that the Texas Court of Criminal Appeals overrule its holding in *Peraza* and reinstate its holding in *Carson*,[15] which

---

[14]       MAGNA CARTA, *supra* note 1, at 45.

[15]       In *Peraza*, the court of criminal appeals, criticized, as being "a *reductio ad absurdum* argument," its previous explanation in *Carson* that "[i]f something so remote as a law library may be properly charged to the litigant on the theory that it better prepares the courts and the attorneys for the performance of their duties, it occurs to us that we might logically tax an item of cost for the education of such attorneys and judges and even the endowments of the schools they attend." *Peraza v. State*, 467 S.W.3d 508, 515 (Tex. Crim. App. 2015); *Carson*, 159 S.W.2d at 127. However, the court's own expressly stated reasoning in *Peraza* illustrates that its previous reasoning in *Carson* was valid, sound, and actually prophetic:

> We continue to hold, as we did in *Weir*, that court costs should be related to the recoupment of costs of judicial resources. However, we must revisit whether *Carson*'s requirement—that such costs be "necessary" and "incidental" to the trial of a criminal case—is still a proper standard for assessing whether a court cost assessed against a criminal defendant is constitutionally valid. The terms "necessary" and "incidental" are commonly used and easily understood words; however, we find that they are too limiting to continue to be the litmus test. In the 73 years since *Carson* was decided, the prosecution of criminal cases and our criminal justice system have greatly evolved. Our legislature has developed statutorily prescribed court costs with the intention of reimbursing the judicial system for costs incurred in the administration of the criminal justice system. To require such costs to be "necessary" or "incidental" to the trial of a criminal case in order to be constitutionally valid ignores the legitimacy of costs that, although not necessary to, or an incidental expense of, the actual trial of a criminal case, may nevertheless be

was consistent with the Separation of Powers Provision and Open Courts Provision of the Texas Constitution as well as Texas Supreme Court precedent and the Fifth and Fourteenth Amendments to the United States Constitution.

Until the court of criminal appeals corrects its holding in *Peraza*, or the United States Supreme Court overrules it, this Court, as an intermediate court of appeals, however, is bound to follow *Peraza*, no matter how erroneous the reasoning expressed therein. *See State ex rel. Vance v. Clawson*, 465 S.W.2d 164, 168 (Tex. Crim. App. 1971) ("The Court of Criminal Appeals is the court of last resort in this state in criminal matters. This being so, no other court of this state has authority to overrule or circumvent its decisions, or disobey its mandates."

---

> directly related to the recoupment of costs of judicial resources expended in connection with the prosecution of criminal cases within our criminal justice system.
>
> We therefore reject *Carson*'s requirement that, in order to pass constitutional muster, the statutorily prescribed court cost must be "necessary" or "incidental" to the "trial of a criminal case." We hold that, if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal justice purposes, then the statute allows for a constitutional application that will not render the courts tax gatherers in violation of the separation of powers clause. A criminal justice purpose is one that relates to the administration of our criminal justice system. Whether a criminal justice purpose is "legitimate" is a question to be answered on a statute-by-statute/case-by-case basis.

*Peraza*, 467 S.W.3d at 517–18 (footnotes omitted). In fact, by redefining the words "court costs" to include monies dedicated to the state highway fund and the general revenue fund of the state's criminal justice account, the Court in *Peraza* very well proves the point that it had previously made in *Carson*.

21

(internal quotations omitted)); *Lewis v. State*, 448 S.W.3d 138, 146 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) ("We are bound in criminal cases to follow decisions of the Court of Criminal Appeals.").

Accordingly, I must reluctantly concur in the judgment of this Court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Brown.

Jennings, J., concurring.

Publish.  Tex. R. App. P. 47.2(b).